Commonwealth *v.* Magaro, Appellant.

Argued November 9, 1953. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Carl B. Shelley,* with him *Warren G. Morgan* and *Shelley & Reynolds,* for appellant.

*Huette F. Dowling,* District Attorney, for appellee.

OPINION BY WRIGHT, J., March 16, 1954:

Eugene A. Magaro, a club steward, was convicted in Dauphin County on a bill of indictment charging him with keeping a gaming house and possessing, setting up and operating gambling devices in violation of the Act of 1939, P. L. 872, §605, 18 P.S. §4605. His motion for a new trial was overruled, and this appeal followed.

On Sunday, April 27, 1952, a search warrant was issued and served on appellant at the club, resulting in the seizure of four slot machines, a punch board, and several prizes. On Monday, April 28, 1952, information was made, based upon the evidence seized, and appellant was arrested. On May 12, 1952, before indictment, appellant petitioned the lower court for a rule to show cause why the search warrant should not be quashed, the evidence suppressed, and he be discharged, alleging that the issuance and services of the search warrant on Sunday was void under the Act of 1705, 1 Sm. L. 25, §4, 44 P.S. §1. After exhaustive consideration in a noteworthy opinion by Judge KREIDER, the rule was discharged. Appellant was subsequently indicted and tried by the court without a jury. At the trial, appellant moved to quash the indictment, objected to the admission of the evidence obtained under the search warrant, and demurred to the evidence. All of these issues were resolved against appellant by the trial judge.

In the present appeal, appellant has raised two questions, first, that a warrant may not "be served on Sunday to search premises for slot machines where there

has been no open or visible disturbance of the public peace"; and second, that the evidence obtained thereunder is not admissible.

The basis of appellant's first contention is that the search warrant was issued, served and executed on Sunday, contrary to the Act of 1705, supra, which reads as follows: "No person or persons, upon the first day of the week, shall serve or execute, or cause to be served or executed, any writ, precept, warrant, order, judgment or decree, except in case of treason, felony or breach of the peace; but the serving of any such writ, precept, warrant, order, judgment or decree shall be void, to all intents and purposes whatsoever; and the person or persons so serving or executing the same, shall be as liable to the suit of the party grieved, and to answer damages to him for doing thereof, as if he or they had done the same without any writ, precept, warrant or order, judgment or decree at all".

Our Act of 1705 was based on Section 6 of the Statute of 29 Charles II, cap. 7, which was enacted in England in 1667. See *Omit v. Commonwealth*, 21 Pa. 426. That Act similarly provided that "noe person or persons upon the Lord's Day shall serve or execute or cause to be served or executed any writt, processe, warrant, order, judgment or decree (except in cases of treason, felony, or breach of the peace) . . ." In *Rawlins v. Ellis*, 153 English Reports (Reprints) 1147, 16 M. & W. 172, 16 L. J. Ex. 5, 10 Jur. 1039, plaintiff brought an action for assault and false imprisonment against police-inspectors who had arrested him on Sunday for unlawfully conspiring to deprive another of the peaceable possession of a certain house. In giving judgment for defendants, the court said that: "The meaning of the statute is, that it authorises the arrest on a Sunday of all persons who have been guilty of any indictable offence".

The same result has been reached in this country in construing the constitutional immunity from arrest except in cases of treason, felony and breach of the peace. In *Williamson v. United States,* 207 U. S. 425, 28 S. Ct. 163, a member of Congress sought to invoke the privilege from arrest extended to members of Congress "in all Cases, except Treason, Felony and Breach of the Peace". See Constitution of the United States, Art. 1, §6, Cl. 1. Williamson had been convicted of conspiring to commit subornation of perjury, and protested against the court passing sentence upon him on the ground that he would thereby be deprived of his constitutional right to go to, attend at and return from the ensuing session of Congress. He contended that the offense in question was admittedly neither treason nor felony, and that it likewise was not embraced within the words "breach of the peace", since no actual breach of the peace was involved. Mr. Justice WHITE, in delivering the opinion of the court, traced the origin of the phrase "treason, felony, and breach of the peace" and made an exhaustive review of the privilege as it developed in England and was carried over to this country. He concluded that the exception includes all indictable offenses. Quoting Story on the Constitution, he said: " 'Now, as all crimes are offenses against the peace, the phrase "breach of the peace" would seem to extend to all indictable offenses, as well those which are in fact attended with force and violence, as those which are only constructive breaches of the peace of the government, inasmuch as they violate its good order' ". This interpretation was followed in *Long v. Ansell,* 293 U. S. 76, 55 S. Ct. 21, wherein Mr. Justice BRANDEIS held that the privilege is limited only to immunity from arrest in civil suits.

In Pennsylvania, Article 2, Section 15 of the Constitution of 1874 provides that "members of the Gen-

eral Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions . . ." This provision was interpreted in *Commonwealth ex rel. Bullard v. The Keeper of the Jail,* 4 W.N.C. 540. There a member of the House of Representatives was arrested on a charge of embezzlement, and claimed benefit of the privilege since he was on his way to the State Capitol when arrested. The court held that the phrase "breach of the peace" included all indictable misdemeanors, and refused to discharge the relator. Reviewing the history of the privilege, Judge CLAYTON said: "As the object was to *limit* the privilege from arrest to that then enjoyed by members of the British Parliament, and as the same language is employed as had been adopted in England to express the offences for which members of Parliament could be arrested, to wit: 'Treason, felony, and *breaches of the peace,*' it follows that all offences in England, comprehended in the words *breach of the peace,* are excepted from the privilege from arrest. Blackstone says there is no precedent for any such privilege, but only in civil suits. (1 Bl. Com. 167.) He further observes that the words, *'breach of the peace,'* include all *indictable* misdemeanors, for all crimes are treated by law as being *contra pacem domini regis* . . . It may be safely concluded that the privilege from arrest in America, is in no case greater than the same privilege in England".

We are in entire accord with this interpretation of the words "breach of the peace" as used in the statute under consideration. Since the constitutional phrase is identical with the statutory phrase, both being taken from early English Law, in our opinion they should be interpreted alike. A review of the authorities inevitably leads to the conclusion that the original intendment

of the phrase was to cover all indictable offenses. Indeed, to construe the words in the narrow sense urged by appellant would create an anomalous situation wherein the criminal whose act falls short of an actual breach of the peace could on Sunday be immune from a law which on any other day of the week would be enforceable. As was said in *Cecil v. Nottingham,* 88 English Reports (Reprints) 1371, 12 Mod. 348, where it was held that an attachment for contempt could be served on Sunday: "Surely the Lord's Day ought not to be a sanctuary for malefactors".

While our determination of the first question renders further discussion unnecessary, we might point out that appellant's second contention is likewise untenable. In *Commonwealth v. Dabbierio,* 290 Pa. 174, 138 A. 679, it was held that, although a search warrant was issued and served in violation of Article 1, Section 8 of the State Constitution, the evidence secured thereby was admissible.[1] Evidence secured as the result of an alleged violation of a statute can not be held to be any less admissible. We said recently in *Commonwealth v. Rich,* 174 Pa. Superior Ct. 174, 100 A. 2d 144, that "the admissibility of evidence is not affected by the illegality of the means through which the Commonwealth has been enabled to procure the evidence".

Judgment affirmed.

---

[1] The Supreme Court of the United States has recently affirmed the decision of a California District Court of Appeal that evidence obtained in violation of the provisions of the Federal Constitution is nevertheless admissible. See *Irvine v. California,* U. S.