677 A.2d 846

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Samuel TAYLOR.**

Superior Court of Pennsylvania.

Submitted Jan. 9, 1996.

Filed May 7, 1996.

Before: TAMILIA, FORD ELLIOTT and EAKIN, JJ.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for the Commonwealth, appellant.

Rosalyn G. McCorkle, Pittsburgh, for appellee.

TAMILIA, Judge.

The Commonwealth presents this appeal from the July 26, 1995 Order granting appellee's motion to suppress the cocaine recovered from him during a warrantless arrest and search. The facts of this case are as follows.

On the afternoon of August 12, 1991, Constable Daniel M. Certo arrived at an apartment on Thomas Boulevard in Pittsburgh in order to evict appellee for failure to pay rent. Constable Certo notified appellee of the eviction and appellee began to pack his belongings. As he did so, the constable noticed appellee place a plastic bag containing smaller bags of a white substance in his right, rear pocket. The constable also noticed appellee removing a large sum of prepackaged money from a drawer beneath his bed.[1] Constable Certo then arrested appellee and conducted a search of his person, believing that the plastic bags contained illegal drugs and the money was proceeds from illegal drug dealing activity. Pursuant to the search, 54 small bags of crack cocaine were recovered. Thereafter, appellee was charged with one count of possession of a controlled substance [2] and one count of possession with

---

1. The money was later determined to be in the amount of $3,401.

2. 35 P.S. § 780–113(a)(16).

intent to deliver.[3] Trial was scheduled for May 21, 1992. However, on that date, appellee failed to appear and an arrest warrant was issued. Appellee was arrested the following day and on October 27, 1994, he pled guilty to the offenses charged. He was immediately sentenced to a mandatory term of three (3) to six (6) years' imprisonment pursuant to 18 Pa.C.S.A. § 7508, **Drug trafficking sentencing and penalties.** On October 28, 1994, appellee filed a Motion to Withdraw Guilty Plea, which was granted following a hearing on February 3, 1995. Trial was then scheduled for March 23, 1995. On March 10, 1995, appellee filed his Motion to Suppress. The motion was granted by Order dated July 26, 1995 and this appeal followed.

█ Beneath the veneer of this simple fact pattern is an issue of first impression in this Commonwealth, namely, whether constables are lawfully empowered to make warrantless arrests for violation of the drug laws.[4] If constables lack such power, as found by the trial court, Constable Certo's arrest and subsequent search of appellee was illegal, unless privileged on some other basis.[5]

While our appellate courts have not specifically addressed the warrantless arrest powers of constables, our Supreme Court has recently considered the general status of constables under Pennsylvania law. *In Re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985 (1991), involved a legislative attempt to place the supervision, training and certification of constables under the judicial branch of our state government. In holding the Act an unconstitutional violation of the "separation of powers doctrine" contemplated by the Pennsylvania Constitution, the Court noted the following with regard to constables:

3. *Id.,* § 780–113(a)(30).

4. Our determination of the power of constables to make warrantless arrests requires the assumption, for purposes of this appeal only, that Constable Certo had probable cause to believe appellee was engaged in a violation of the drug laws, since without probable cause the arrest was invalid whether or not Constable Certo possesses the power to enforce the drug laws.

5. The concept of citizen's arrest is discussed infra.

A constable is an elected official authorized to appoint deputy constables. 13 Pa.C.S. § 1, et seq. A constable is an independent contractor and is not an employee of the Commonwealth, the judiciary, the township or the county in which he works.

. . . . .

Simply stated, a constable is a peace officer. A constable is a known officer charged with the conservation of the peace, and whose business it is to arrest those who have violated it.

*Id.* at 462–63, 469, 598 A.2d at 986, 990 (citation and footnote omitted).

■ Thus, according to our Supreme Court, "a constable is a peace officer." [6] *Id.* Unfortunately, while Act 147 assists our determination, our case law is silent as to whether a "peace

**6.** The Supreme Court's statement that "a constable is a peace officer" was merely express recognition of a well-settled legal principle. *See e.g.,* Black's Law Dictionary (5th ed. 1979) (defining "peace officers" to include "sheriffs and their deputies, constables . . . and other officers whose duty it is to enforce the peace."), and 6A C.J.S. Arrest, § 17 ("Justices, sheriffs, coroners, constables and watchmen are recognized peace officers at common law."). Lastly, 16 P.S. § 1216, Peace officers; powers and duties, expressly applies to constables.

Moreover, following its statement that "a constable is a peace officer," the Court inserted a footnote which provides, "[t]he constable is a police officer." *In Re Act 147 of 1990,* 528 Pa. 460, 471, 598 A.2d 985, 990 (1991). Instantly, the Commonwealth asserts that this statement constitutes Supreme Court recognition that constables possess "the same authorities and duties" as police officers under all circumstances. (Appellant's brief at 10.) We flatly reject this claim. Specifically, when read in the context in which it was uttered, the Court's statement indicates that the powers of constables and police officers are coextensive in matters relating to "conservation of the peace." *Id.* Further, as the remainder of the Court's Opinion indicates, its notation that "[t]he constable is a police officer" was intended as further support for the Court's ultimate conclusion that "a constable belongs analytically to the executive branch of government." *Id.* Therefore, since *Act 147* did not involve the relative arrest powers of constables and police officers, the Court's statement cannot be taken as a blanket endorsement of constable powers coextensive with those of police officers under all circumstances. Finally, the Court's finding that constables are independent contractors, as quoted above, clearly indicates that the Court did not consider constables and police officers analogous for all purposes, since Pennsylvania law has never characterized police officers as independent contractors.

officer" has the power to make a warrantless arrest under the facts of the case. Our Supreme Court's recent decision in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), however, is sufficiently analogous to provide a starting point for our analysis.

In *Leet*, "[t]he issue [was] whether a deputy sheriff has authority in Pennsylvania to make a warrantless arrest for motor vehicle violations committed in his presence." *Id.* at 91, 641 A.2d at 300.[7] The trial court had concluded that the deputy sheriff lacked such power and, like the trial court herein, suppressed evidence seized pursuant to what the court considered an illegal arrest. The Commonwealth's appeal was certified for en banc review by our Court, which affirmed by a vote of six to two the trial court's conclusion that deputy sheriffs lack authority to enforce the Motor Vehicle Code. *Commonwealth v. Leet*, 401 Pa.Super. 490, 585 A.2d 1033 (1991).[8]

Our Court en banc began its analysis by discussing 16 P.S. § 1216, *supra*, which provides that sheriffs and deputy sheriffs "shall perform all those duties authorized or imposed on them by *statute*." *Id.* at 493, 585 A.2d at 1035 (emphasis in original). From this provision, we drew the inference that sheriffs possess only those powers which are "authorized ... by statute." *Id.* We then engaged in a thorough review of the Motor Vehicle Code and, citing numerous provisions that refer to "police officers", found "that the legislature intended to vest police, not sheriffs, with authority to enforce the provisions of the Vehicle Code.... There is no corresponding provision in the Vehicle Code, or in any statute, which authorizes sheriffs or deputy sheriffs to arrest motorists without a warrant...." *Id.* at 493, 495, 585 A.2d at 1035, 1036.

Finally, our Court addressed, as follows, the Commonwealth's claim that sheriffs possess the common law power to enforce the Vehicle Code:

7. We find *Leet* helpful because sheriffs, like constables, are defined as "peace officers." See footnote 6, *supra*, and Blackstone, *Commentaries on the Law of England* (Callaghan & Co., 1899), Book IV, p. 292.

8. Two members of the en banc panel dissented and one did not participate in the resolution of the case.

The Commonwealth would nevertheless have us revert to the common law to find general peace-keeping duties in the sheriff. Based on authority vested in sheriffs and deputy sheriffs by the common law, the Commonwealth argues that sheriffs and deputy sheriffs have inherent power and authority to arrest without a warrant for all crimes, however defined, committed in their presence, including Vehicle Code violations. We are unable to accept this reasoning. In the first place, an attempt to imply power where the same has not been granted by statute would be in direct violation of the legislature's mandate that sheriffs and deputy sheriffs shall perform the duties imposed by statute.

*Id.* at 497, 585 A.2d at 1037.

Following our en banc decision affirming the trial court, the Supreme Court granted allocatur. *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994). Unlike our Court en banc, which held that the issue must be resolved solely by resort to statute, the Supreme Court began its analysis with an exhaustive review of the powers possessed by sheriffs at common law. Following this review, the Court found:

[T]he common law power of the sheriff to make arrests without warrant for felonies and for breaches of the peace committed in his presence ... [is] so widely known and so universally recognized that it is hardly necessary to cite authority for the proposition ... [Thus], [u]nless the sheriff's common law power to make warrantless arrests for breaches of the peace committed in his presence has been abrogated, it is clear that a sheriff (and his deputies) may make arrests for motor vehicle violations which amount to breaches of the peace committed in his presence.

*Id.* at 95–96, 641 A.2d at 303.

As this passage indicates, the Supreme Court completely inverted the analytical framework upon which our en banc decision was based. Where we had found that sheriffs possess only those Vehicle Code enforcement powers which are statutorily set forth, notwithstanding any common law powers, the Supreme Court held that sheriffs may exercise all powers

traditionally possessed at common law, except those which our statutory law specifically has abrogated. "In short", the Court concluded, "it is not necessary to find a motor vehicle code provision granting to sheriffs the power to enforce the code—sheriffs have had the power and duty to enforce the laws since before the Magna Carta; rather, it would be necessary to find an unequivocal provision in the Code abrogating the sheriff's power in order to conclude that the sheriff may *not* enforce the Code." *Id.* (emphasis in original). Following its determination that sheriffs possess the power to enforce the Vehicle Code, the Court remanded for a determination of whether sheriffs have been adequately trained for such enforcement. *Id.*[9]

■ In sum, *Leet* stands for the proposition that in determining the authority of peace officers we must consider not only statutory powers but also any common law powers which preexisted and exceed those statutory powers. Unfortunately, the trial court herein restricted its review of a constable's powers to statutory law and therefore made precisely the same mistake as our Court en banc in *Leet.* In determining that Constable Certo lacked the authority to arrest appellee, the trial court relied on 13 Pa.C.S. § 45, Arrest of offenders in view, which provides as follows:

The policemen and constables of the several boroughs of this Commonwealth, in addition to the powers already conferred upon them, shall and may, without warrant and upon view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens,

9. Additionally, in *Commonwealth v. Gorski,* 538 Pa. 472, 649 A.2d 129 (1994) (per curiam) the Supreme Court reversed an Order of our Court entered at 418 Pa.Super. 648, 607 A.2d 1123 (1992), which had affirmed a trial court suppression Order on the basis that deputy sheriffs lack authority to enforce the Vehicle Code. The Supreme Court's Per Curiam Order, dated October 10, 1994, also remanded "for disposition consistent with *Commonwealth v. Leet*[.]" *Gorski, supra* at 472, 649 A.2d at 129.

or violating any ordinance of said borough, for the violation of which a fine or penalty is imposed.

Following its review of this statute, the trial court held:

Looking at the statute on its face, this Court finds that the statute is clear on its face. Constables have authority to arrest on view for certain stated offenses. Constable Certo was at the premises to evict the Defendant, one of the statutory duties he is empowered with. The actions he took, however, were not amongst those set out by statute with which he was empowered. This Court is hard pressed to find case law supporting the Commonwealth's contention that the constable was statutorily empowered to arrest Defendant without a warrant while on the premises to evict Defendant. Therefore this Court finds no merit to the appeal.

(Slip Op., Little, J., 7/26/95, p. 4.)

Hence, by restricting its review solely to statutory law empowering warrantless arrests, rather than determining whether any statutory law has abrogated already-existing common law powers, the trial court violated the mandate of *Leet.*[10] It thus falls to us to consider the nature of power possessed by constables at common law.

■ Initially, we note "[t]he office of constable is not of the same grade and dignity as that attributed" to the common law sheriff considered in *Leet.*[11] Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables* (Dennis & Co., 1941), § 7, p. 5. Further, "[a constable's] powers are less and his

10. We also reject the trial court's finding that, "on its face", section 45 limits warrantless arrest powers only to those enunciated. Initially, the statute expressly grants powers "in addition to the powers already conferred." Moreover, section 45 applies to "policemen" as well as "constables" and it cannot be argued that the arrest powers of "policemen" are limited to the few offenses contemplated by the section.

11. The Supreme Court's decision in *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994), empowering sheriffs with Motor Vehicle Code enforcement responsibilities expressly turned on the Court's finding that "in times going back to the Magna Carta, the sheriff was the chief law enforcement officer of the shire or county." *Id.* at 95, 641 A.2d at 302.

jurisdiction smaller" than those of the sheriff. Black's Law Dictionary (5th ed. 1979), p. 281. Nonetheless, in light of the lofty status possessed by common law sheriffs, the fact that constables were somewhat less powerful does not conclude our determination of whether Constable Certo possessed the power to make a warrantless arrest of appellee for his violation of the drug laws. Such a determination requires a more thorough review of the historical texts and treatises discussing the common law powers of constables.

Anderson, in his Treatise, supra, § 4, p. 3, states that the term "constable" is "derived from the Latin 'comes stabuli,' an officer who regulated all matters of chivalry, tilts, tournaments and feats of arms which were performed on horseback." Accord, see Blackstone, *Commentaries on the Laws of England* (Callaghan & Co., 1899), Vol. I, Book I, p. 356. Moreover, at least one historian claims to have uncovered the original oath administered to constables upon their recognition as royal officials by the crown of England. Joan R. Kent in *The English Village Constable,* 1580–1642 (Oxford 1986), p. 52, states that the oath "specified only that [constables] should exercise the office within their townships, present 'all mannour of bloodsheddes, assaltes and affreys and outcryes' against the kings peace, execute all writs and precepts lawfully directed to them, and personally do all in their power to conserve the peace." *Id.* at 52 (citing Trotter, *Seventeenth Century Life,* p. 85.).

Despite the earliest conceptions of constables as mere regulators of games and conservators of the peace, it is beyond question that by the late sixteenth and early seventeenth centuries their duties had expanded considerably. See generally Kent, *supra.* By this time, Blackstone notes:

The constable . . . hath great original and inherent authority with regard to arrests. He may, without warrant, arrest any one for a breach of the peace, committed in his view, and carry him before a justice of the peace. And in case of felony actually committed, or a dangerous wounding, whereby felony is like to ensue, he may upon probable suspicion arrest the felon[.]

Blackstone, *Commentaries, supra,* at Book IV, p. 292. As with virtually all other aspects of English common law, the office of constable was retained in America prior to and following the Revolution. In speaking of constables in this country, Anderson has stated that "the [modern] constable has all the powers that appertain to his ancient predecessor under the common law." *Treatise, supra* at § 7, p. 5. Blackstone has enunciated those retained powers as follows:

> A constable in the United States ... may arrest for felony or breach of the peace without warrant, and will be excused from liability in doing so, even though it prove that the supposed offence has not been committed, provided the arrest was made on reasonable grounds of belief. ·

*Commentaries, supra* at Book I, p. 357, n. 1.

Contemporary treatises also have asserted that constables may make warrantless arrests for felonies and breaches of the peace. For instance, 6A C.J.S. Arrest, § 19 For Felony provides:

> a. In General

> A peace officer may without a warrant arrest one whom he finds attempting to commit, or one who is committing, or has committed, or who he reasonably believes is committing, a felony in his presence or in his view, or when a person has committed a felony, although not in his presence.

Similarly, 5 Am.Jur.2d Arrest, Paragraph 3, By Peace Officers, § 47 provides:

> § 47. **Generally**

> .     .     .     .     .

> At common law, peace officers were authorized to arrest without warrant felons and persons reasonably suspected of being felons. As conservators of the peace, peace officers also had authority to arrest for offenses less than a felony committed in their presence, at least where a breach of the peace was involved. Thus, a peace officer may arrest without warrant under any conditions where a private person might do so, and also in the following additional cases: (1) reasonable suspicion of felony, whether or not any felony

was actually committed, and (2) an affray in the officer's presence and reasonable suspicion of participation therein, if the arrest is made at once or on fresh pursuit.

Moreover, Restatement, Second, Torts § 121 states:

121. Arrest by Peace Officer Without Warrant

[A] peace officer acting within the limits of his appointment is privileged to arrest another without a warrant

(a) under any of the conditions which under the rules stated in [§ ] 119 ... give to a private person the privilege to arrest without a warrant.

Section 119, as referenced by section 121, provides:

119. Arrest Without Warrant by Private Person for Criminal Offense

[A] private person is privileged to arrest another without a warrant for a criminal offense

(b) if an act or omission constituting a felony has been committed and the actor reasonably suspects that the other has committed such act or omission[.]

Thus, since private citizens are empowered to make warrantless arrests for felonies under section 119, peace officers are also permitted to make such arrests under section 121.

Finally, although finding it inapplicable to the facts at issue, our Court has acknowledged the "general rule" as follows:

A peace officer may, without a warrant, arrest for a felony or for a misdemeanor committed in his presence although the right to arrest for a misdemeanor, unless conferred by statute, is restricted to misdemeanors amounting to a breach of the peace.

*Commonwealth v. Pincavitch,* 206 Pa.Super. 539, 544, 214 A.2d 280, 282 (1965) (citation omitted).

Based on this review,[12] we find that overwhelming authority supports the proposition that constables possessed the power at common law to make warrantless arrests for felonies and

12. In addition to the authorities cited, we have reviewed the text principally relied upon by the *Leet* Supreme Court, Stenton, *English Justice Between the Norman Conquest and the Great Charter.* However, the text does not discuss the warrantless arrest powers of constables.

breaches of the peace. Further, complying with the mandate of *Leet*, we have examined the statutes and found no provision abrogating that power. Hence, since appellee's possession of a controlled substance with intent to deliver constitutes a felony under 35 P.S. § 780–113(f)(1), we are unable to escape the conclusion that Constable Certo was empowered to arrest appellee. However, since the trial court never reached a determination of probable cause, our finding that Constable Certo possessed the common law power to arrest appellee does not necessarily compel the conclusion that the arrest was legal. Thus, we must remand for a determination of probable cause.[13]

Finally, we note the trial court's conclusion that constables "should have no greater police powers than private citizens." (Slip Op., Little, J., 7/26/95, p. 3.) Our historical review of the common law powers possessed by constables also indicates the fundamental principle that "a private person may arrest without a warrant for a felony if the felony has been committed and the private person reasonably suspects that the person arrested is the felon...." Pennsylvania Law Encyclopedia, Arrest, § 5; 5 Am Jur 2d § 56 ("the common law accorded a private person extensive powers to arrest without warrant for felonies and breaches of the peace committed in his or her presence"); see also *Commonwealth v. Corley*, 507 Pa. 540, 491 A.2d 829 (1985) ("the conditions required to establish the privilege [of a citizen's arrest], generally stated, are that a felony has been committed and that the actor reasonably suspects that the person whom he arrests has committed the felony"), and Restatement, Second, Torts § 119, quoted *supra*.

While our conclusion that constables possess the common law power to make warrantless arrests for felony drug law violations renders unnecessary a consideration of whether

13. Despite the fact that constables lack the common law power to arrest for misdemeanors not involving breaches of the peace, the count charging appellees with simple possession, a misdemeanor under 35 P.S. § 780–113(a)(16), need not be discharged since it relates to the power of the Commonwealth to charge those crimes to which the defendant must ultimately answer once probable cause has been established based upon the belief that a felony has been committed.

Constable Certo's arrest of appellee also was privileged as a citizen's arrest,[14] we note the common law arrest powers of citizens to further clarify our instant holding.

Specifically, rather than enlarging the power of constables, our holding today merely recognizes that they possess a power exercised by private citizens since antiquity, the power to make warrantless arrests for felonies. In this sense, our decision is completely consistent with well-established law. See e.g., Restatement, Second, Torts § 121, Comment on clause (a) ("the peace officer has all the privileges of arrest which ... are conferred upon one not a peace officer."). Thus, our holding avoids the anomalous situation of depriving constables of powers possessed by the ordinary citizenry. Accord, see *Commonwealth v. Giles*, 14 Adams L.J. 169 (1973); *Nash, McCarty, Ball, supra* at note 14.

**14.** We note the existence of substantial authority indicating that an arrest by a peace officer acting without jurisdiction is nonetheless valid where a private citizen could have made the arrest. For instance, Restatement, Second, Torts § 121, Comment on clause (a) provides as follows:

The peace officer has all the privileges of arrest which ... are conferred upon one not a peace officer. In such a case, his privilege to arrest is not dependent upon his being a peace officer; and it is immaterial whether he purports to act in his capacity as peace officer or as a private person or whether he is or is not acting within the territorial and other limits of his designation.

*Id.; see also Gaither v. United States*, 134 App.D.C. 154, 413 F.2d 1061 (1969) (arrest held valid where conducted by special police officer who, although exceeding jurisdiction, retained the power of a private citizen to arrest for felony committed in his presence); *Nash v. State*, 207 So.2d 104 (Miss.1968) (appellant's arrest for manslaughter held valid despite arresting sheriff's lack of territorial jurisdiction, on the basis that sheriff retained the right of a private citizen to arrest for felonies committed in his presence); *People v. Alvarado*, 208 Cal.App.2d 629, 25 Cal.Rptr. 437 (1962) ("an arrest by a city policeman outside his territorial jurisdiction is unquestionably valid if made upon grounds which would authorize a lawful arrest by a private citizen."); *accord, People v. Burgess*, 170 Cal.App.2d 36, 338 P.2d 524; *People v. McCarty*, 164 Cal.App.2d 322, 330 P.2d 484 (1958); *People v. Ball*, 162 Cal.App.2d 465, 328 P.2d 276 ("it would appear anomalous to hold unlawful an arrest by a peace officer when the same arrest by a private citizen clearly would have been lawful."); *State v. Hart*, 149 Vt. 104, 539 A.2d 551 (1987) (misdemeanor arrest by constable acting without jurisdiction held invalid on the basis that constable, even as a private citizen, lacked power to conduct *misdemeanor* arrest).

In summary, we hold that constables possess the common law powers to conduct warrantless arrests for felonies and breaches of the peace. Since those powers have not been abrogated by our statutory law, they are retained by the constables of this Commonwealth. *Leet, supra.* Thus, constables currently possess the power to make warrantless arrests for felony violations of the drug laws. However, under the facts of this case, a finding of probable cause must be made prior to the determination that Constable Certo's arrest of appellee was legal. Hence, we remand for a determination of probable cause.

Lastly, we note that the Supreme Court in *Leet* remanded on the following basis:

It has been argued that to protect public safety, anyone who enforces the motor vehicle laws should be required to undergo training appropriate to the duties. It is certainly within the proper function of government and in keeping with the realities of the modern world to require adequate training of those who enforce the law with firearms. Policemen, to whom the legislature has given primary responsibility for enforcement of the motor vehicle code, are required by statute to undergo formal training prior to enforcing the law. We deem this requirement to apply equally to sheriffs who enforce motor vehicle laws. Thus a sheriff or deputy sheriff would be required to complete the same type of training that is required of police officers throughout the Commonwealth.

As the record is incomplete in this respect, we must remand the case for a finding as to whether deputy sheriff Gibbons had completed appropriate law enforcement training, and for further proceedings consistent with this opinion.

*Leet, supra* at 96–97, 641 A.2d at 303 (footnotes omitted).

We find this rationale applicable instantly. Hence, in addition to determining probable cause, the trial court on remand must also inquire as to whether Constable Certo was adequately trained to address felony drug law violations encountered within the exercise of their duties.

Case remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.