J-S80033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JACK CLARK GARNER | |
| Appellant | No. 453 MDA 2016 |

Appeal from the PCRA Order February 17, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003867-2010

BEFORE:  LAZARUS, J., STABILE, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 11, 2017**

Appellant, Jack Clark Garner, appeals from the February 17, 2016 order, denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On April 14, 2011, a jury convicted Appellant of three counts of official oppression and two counts of impersonating a public servant[1] as a result of his actions in May 2010.[2]  Appellant, an elected constable for South Hanover Township, Dauphin County, followed and blocked in two cars with young female occupants in Lower Paxton Township, Dauphin County.  Appellant

---

[1] 18 Pa.C.S. § 5301 and 18 Pa.C.S. § 4912, respectively.
[2] *See* PCRA Court Opinion (PCO), 1/20/16, at 1-5, for a more detailed factual history of this case; *see also* Notes of Testimony (N. T.), 6/29/11, at 51.

testified that he conducted these stops after witnessing Andrea Sherman cut off another vehicle, and after witnessing Jessica Bender throw a cigarette butt from the passenger window of a car driven by Lauren Christen. Appellant demanded the women provide him with licenses, registration, and other personal information. He referred to himself as an "officer" during the course of these encounters and flashed his constable's badge.

At trial, Appellant presented his brother as a character witness to testify to his reputation in the community. The Commonwealth presented a number of rebuttal witnesses to testify to his bad reputation in the community, specifically that he did not have a good reputation in the community for being law-abiding or honest.

On June 29, 2011, the trial court sentenced Appellant to an aggregate of four to twenty-four months of intermediate punishment, followed by eight years of probation, 250 hours of community service, and a prohibition against holding public office. Appellant timely filed post-sentence motions, which the court denied.

Appellant timely filed a direct appeal, arguing that the jury's verdict was against the weight of the evidence presented at trial. This Court affirmed his judgment of sentence on July 9, 2012. *See Commonwealth v. Garner*, 55 A.3d 126 (Pa. Super. 2012) (unpublished memorandum). Appellant did not petition for allowance of appeal to the Pennsylvania Supreme Court.

On August 8, 2013, Appellant timely filed a counseled PCRA petition. After a year of continuances, Appellant filed an amended PCRA petition, raising numerous allegations of ineffective assistance of counsel. Specifically, Appellant claimed counsel was ineffective for 1) failing to challenge the sufficiency of the evidence on direct appeal; 2) failing to submit jury instructions or object to those instructions given to the jury that did not explain the lawful authority to encounter citizens or the test to determine what type of encounter occurred; 3) failing to properly advise Appellant about the consequences of calling character witnesses; and 4) failing to object to the prejudicial mannerisms of the trial court.

The PCRA court held an evidentiary hearing on April 1, 2015. Trial counsel testified that with regard to the jury charges, he had prepared jury instructions for the court. *Id*. at 26-27. With regard to Appellant's character witnesses, trial counsel would have advised Appellant about the presentation of character witnesses. *Id.* at 52. With regard to questioning about the trial court's demeanor, counsel was familiar with the court and the dynamics of that courtroom and "chose his battles" so as not to make a potentially hostile situation worse for his client. *Id.* at 31-34. He did not feel the court's remarks or demeanor were so egregious as to lodge an objection at that time. *Id.* at 34-35.

On January 19, 2016, the PCRA court found that Appellant was not entitled to PCRA relief and issued an order giving Appellant notice of its

intent to dismiss. On February 17, 2016, the court dismissed Appellant's petition.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a statement in lieu of a Pa.R.A.P. 1925(a) opinion, incorporating its previous memorandum opinion and addressing additional issues raised by Appellant in his statement.

Appellant raises four issues on appeal, all relating to ineffective assistance of counsel:

> A. Whether the PCRA court erred in denying Appellant's claim that appellate counsel was ineffective for failing to raise on direct appeal claims of sufficiency of the evidence to both criminal offenses Appellant was convicted of, when Appellant was acting under lawful authority as a constable and where the encounter with the complainants were "mere encounters" and were therefore justified under the law?
>
> B. Whether the PCRA court erred in denying Appellant's claim that trial counsel was ineffective for failing to submit sufficient jury instructions or object to the instructions given to the jury, where the instructions given did not explain the lawful authority of constables to encounter citizens, or the test to determine what type of encounter occurred?
>
> C. Whether the PCRA court erred in denying Appellant's claim that trial counsel was ineffective for failing to advise Appellant that the law would permit the Commonwealth to call rebuttal witnesses to testify to his bad reputation in the community as to the relevant character trait if Appellant opened the door by calling his own character witness?
>
> D. Whether the PCRA court erred in denying Appellant's claim that trial counsel was ineffective for failing to object to the prejudicial mannerisms of the trial court before the jury which tended to belittle Appellant and his defense to the charges?

Appellant's Brief at 4 (unnecessary capitalization omitted).

We review an order denying a petition under the PCRA to determine whether the findings of the PCRA court are supported by the evidence of record and free of legal error. *See Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's findings deference unless there is no support for them in the certified record. *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

We first note that the PCRA court has misapprehended the state of current law regarding waiver by suggesting that Appellant's claims of ineffective assistance of counsel are waived for failure to raise them on direct appeal and properly layer them. Claims of ineffective assistance of counsel must be raised on collateral review and not direct appeal. *See Commonwealth v. Stollar*, 85 A.3d 635, 651-52 (Pa. 2014) (quoting *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002)).[3] Despite the PCRA court's error, "[w]e may affirm a PCRA court's decision on any grounds if it is supported by the record." *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010).

Appellant raises a number of issues relating to ineffective assistance of appellate and trial counsel. Ultimately, they are meritless.

---

[3] *Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013), outlines two exceptions to this rule, but neither exception applies here.

We presume counsel is effective. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). To overcome this presumption and establish the ineffective assistance of counsel, a PCRA petitioner must prove, by a preponderance of the evidence, that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission. *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009) (citations omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A claim will be denied if the petitioner fails to meet any one of these requirements. *Commonwealth v. Springer*, 961 A.2d 1262, 1267 (Pa. Super. 2008) (citing *Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007)); *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). Further, counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

In his first issue, Appellant contends appellate counsel was ineffective for failing to challenge on direct appeal the sufficiency of the evidence. Appellant avers that the evidence was insufficient because he was acting under common law authority as a constable to investigate violations of the crimes code. According to Appellant, constables have the authority to make warrantless arrests, and he had the right to initiate "mere encounters" with

the complainants. Appellant concludes that, due to counsel's failure to pursue the sufficiency claim on appeal, he was denied due process of law. Appellant's Brief at 17-19.

Our analysis begins with the first prong of the ineffectiveness test: whether there is arguable merit to the underlying claims. *See Johnson*, 966 A.2d at 533. A sufficiency claim alleges that the evidence admitted at trial failed to establish all the elements of a crime beyond a reasonable doubt. *See Commonwealth v. Mobley*, 14 A.3d 887, 889-890 (Pa. Super. 2011).

> The elements of official oppression are:
>
> A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:
>
> (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or
>
> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity.

18 Pa.C.S. § 5301. With regard to the *mens rea* required to commit an act of official oppression, this Court has noted that "knowing" means the accused must have been acting in bad faith when subjecting the other to the proscribed activities. *See Commonwealth v. Eisemann*, 453 A.2d 1045, 1048 (Pa. Super. 1982). Thus, to establish Appellant's guilt for official oppression, the Commonwealth was required to prove beyond a reasonable

doubt that Appellant, purporting to act in an official capacity, knowingly subjected the complainants to an illegal detention. *See* 18 Pa.C.S. § 5301; *Eisemann*, 453 A.2d at 1048.

The authority of a constable is not entirely clear. Constables are duly elected officials in cities of the second class, cities of the third class, boroughs, incorporated towns, or townships. *See* 44 Pa.C.S. § 7111. They may "perform all duties authorized and imposed on them by statute." *See* 44 Pa.C.S. § 7151. These duties include keeping the peace during elections, serving process, collecting taxes, arresting offenders against forest laws, executing on judgments, and recovering trespassing livestock. *See* 44 Pa.C.S. §§ 7152-59.

Constables are not police officers and do not share the same general powers as police officers. *See* 53 Pa.C.S. § 2162 (listing various types of law enforcement officials which may be considered duly employed municipal police officers, constables excluded); *see also Commonwealth v. Taylor*, 677 A.2d 846, 851 n.6 (Pa. Super. 1996) (rejecting asserting that constables are police officers); *see also Commonwealth v. Dietterick*, 631 A.2d 1347, 1350 (noting that when vesting a group with police powers and duties, the legislature does so with specificity); *see also* 18 Pa.C.S. § 103 (defining the term police officer to include sheriffs, but not constables); *see also* 44 Pa.C.S. §§ 7132-33 (constables may also be employed as police officers).

For example, police officers are empowered, by the Municipal Police Jurisdiction Act, to effectuate warrantless arrests within their jurisdiction and, outside of their jurisdiction, to effectuate warrantless arrests when certain exceptions are met. *See* 44 Pa.C.S. §§ 8952-53 (noting that police officers may act outside of their primary jurisdiction when, for example, they are in hot pursuit, or on official business and witness and view an offense, etc.). In contrast, the statutory authority of constables is more limited. Title 44 of the Pennsylvania Consolidated Statutes provides that a constable of a borough may, without warrant and upon view, arrest and commit for a hearing any person who is guilty of a breach of the peace, engaged in the commission of an unlawful act that may imperil the personal security or endanger the property of citizens, or violates any ordinance of the borough for which a fine or penalty is imposed. *See* 44 Pa.C.S. § 7158. Appellant, however, was not a borough constable, but a constable of South Hampton Township. Title 44 is silent as to the warrantless arrest powers of township constables, and particularly under what authority constables may conduct warrantless arrests outside of their jurisdiction.

Constables are prohibited from enforcing the Motor Vehicle Code based upon their lack of statutory authority to do so. *See Commonwealth v. Roose*; 710 A.2d 1129, 1130 (Pa. 1998); *see*, *generally*, *Commonwealth v. Roose*, 690 A.2d 268, 270-71 (Pa. Super. 1997) (noting inherent problems with lack of statutory authority allowing constables to perform

traffic stops, which involve seizures and all of their constitutional implications); *see also* 75 Pa.C.S. § 6308 (providing that *police officers* may stop vehicles of anyone suspected to have violated the Motor Vehicle Code) (emphasis added).

Case law has confirmed, to some extent, the common law power of constables to arrest for felonies and breaches of the peace committed in their presence. ***See Taylor***, 677 A.2d at 852. Constables may not make warrantless arrest for misdemeanors or summary offenses *unless* they constitute a breach of the peace. ***See Taylor***, 677 A.2d at 852 (emphasis added). Appellant's own definition of breach of the peace is taken from a 1954 case, which suggests that a breach of the peace includes all indictable offenses, *i.e.*, any offense other than a summary offense. ***See Commonwealth v. Magaro***, 103 A.2d 449, 452 (Pa. Super. 1954); ***see also*** 42 Pa.C.S. § 102.

While Appellant acknowledges that constables are not allowed to enforce the Motor Vehicle Code, he argues that he was instead "enforcing violations of the Crimes Code." Appellant's Brief at 16 (citing in support 18 Pa.C.S. §§ 2705, 6501). Appellant avers that he detained Ms. Sherman under suspicion that she had committed the offense of recklessly endangering another person (REAP), 18 Pa.C.S. § 2705, a misdemeanor, and similarly that Ms. Bender and Ms. Christen had committed the offense of scattering rubbish, 18 Pa.C.S. § 6501, a summary offense. Thus, Appellant

- 10 -

concludes, he was justified in stopping the cars of these young women or in having "mere encounters" with them. However, this assertion is not supported by the law for a number of reasons.

First, despite Appellant's assertions, the interactions which occurred in this case were not mere encounters, but investigatory detentions. *See* *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. 2000) (noting that an investigative detention is an interaction which carries an official but temporary compulsion to stop and respond). By contrast, a mere encounter does not carry an official compulsion to stop and respond. *Id.* Appellant was not authorized to make these traffic stops, despite his arguments that he was acting within his lawful authority as a constable and peace officer when he detained the complainants. *See In Re Act 147 of 1990*, 598 A.2d 986 (Pa. 1991) (noting that a constable is a "peace officer.")

In the instant case, Appellant's actions rose to the level of an investigative detention. Despite having no authority to conduct a traffic stop, Appellant blocked the victims' cars in to their spaces, flashed his badge, and introduced himself as "an officer." Appellant's actions led the victims to believe that he was a police officer subjecting them to traffic stops for allegedly committing crimes. Appellant demanded the victims' license and registration. All of these actions, in conjunction, rose to the level of an investigative detention.

Further, Appellant's arguments that he was enforcing the Crimes Code are not persuasive. The offenses that Appellant was allegedly enforcing were a misdemeanor and summary offense respectively. Thus, the only way he conceivably had the authority to conduct an arrest was if those offenses constituted breaches of the peace. As noted above, Appellant's definition of "breach of the peace" is any indictable offense. However, "breach of the peace" is an archaic term that has not been codified in the Crimes Code. Black's Law Dictionary defines the term as the criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by making an unnecessary or distracting noise. BREACH OF THE PEACE, Black's Law Dictionary (10th ed. 2014).

Even if we accept Appellant's arguments that he was enforcing the Crimes Code, this argument can only be half correct. When Appellant stopped Ms. Sherman's car, he argued that she had committed REAP. REAP, as an indictable offense, could potentially be considered a breach of the peace and potentially within Appellant's purview of lawful authority. However, when Appellant detained Ms. Christen and Ms. Bender, the alleged "offense" was scattering rubbish. By Appellant's own definition, scattering rubbish cannot be a breach of the peace, as it is a summary offense and not indictable. Thus, it was reasonable for a jury to discount Appellant's argument and conclude that Appellant had acted in bad faith for allegedly "investigating" that crime.

Finally, evidence was introduced at trial that was sufficient for the jury, as a fact-finder, to conclude that Appellant had acted in bad faith in his detentions of the victims. Specifically, the evidence introduced at trial established the following.

Appellant purported to act in an official capacity. He approached drivers outside of South Hanover Township, stopped them, displayed his badge, and demanded their licenses, registration, and insurance information. He ordered these young women to remain by their cars. In the course of effectuating these detentions, Appellant referred to himself as an "officer," and the complainants testified they believed they were being subjected to traffic stops by a police officer and were not free to leave. However, Appellant did not make an arrest. He did not issue citations. He did not issue warnings. The complainants were never charged with any crime nor made to pay any fines. The only actions Appellant took were to detain each woman and record her personal information. The complainants testified to their confusion and fear; Ms. Christen specifically denied driving in a reckless manner.

Appellant called his brother to testify to his good character for truthfulness, peacefulness, and for being law abiding. **_See_** N. T. Trial at 158. However, the Commonwealth presented four witnesses to testify to Appellant's bad reputation in the community for being dishonest and not law abiding. N. T. Trial at 196-215.

Thus, considering the circumstances surrounding the detentions and the plethora of character witnesses to testify as to Appellant's reputation for dishonesty, it was reasonable for the jury as a factfinder to conclude that Appellant had acted in bad faith when detaining the complainants. Thus, because Appellant had acted in bad faith, it was proper for the jury to conclude that Appellant possessed the *mens rea* necessary to find him guilty of official oppression.

> With regard to impersonating a public servant:
>
> A person commits a misdemeanor of the second degree if he falsely pretends to hold a position in the public service with intent to induce another to submit to such pretended official authority or otherwise act in reliance upon that pretense to his prejudice.

18 Pa.C.S. § 4912. The evidence introduced at trial was sufficient to support the jury's conviction. Appellant stopped each woman while driving. Appellant flashed his constable badge to the women, and introduced himself as an "officer." Each woman believed Appellant was a police officer effectuating a traffic stop. Each woman was subjected to a seizure, to their prejudice. As discussed above, Appellant was not a police officer and was not acting within his lawful authority at the time of the detentions.

Consequently, the evidence was sufficient to show that Appellant was guilty of the crimes charged. Counsel cannot be ineffective for failure to litigate a meritless claim. **See Fears**, 86 A.3d at 804.

In his second issue, Appellant contends that trial counsel was ineffective for failing to submit sufficient jury instructions or object to the jury instructions given. Appellant argues that the instructions should have explained the lawful authority of constables to encounter citizens and the test to determine what type of encounter occurred, because Appellant's interactions with the women did not rise to the level of investigative detentions. Appellant's Brief at 4.

When evaluating jury instructions, this Court considers whether the instructions as a whole were prejudicial. *Commonwealth v. Carson*, 913 A.2d 220, 255 (Pa. 2006). A trial court is not required to use any particular jury instructions, or particular forms of expression, so long as those instructions clearly and accurately characterize the relevant law. *Id.* The trial court is not required to give every charge that is requested by the parties, and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal. *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted). Jury instructions regarding offenses and defenses are not warranted unless there is evidence to support such instructions. *Commonwealth v. Browdie*, 671 A.2d 668, 674 (Pa. 1996).

We have examined the record, and the trial court's jury charge correctly and accurately sets forth the elements of the crimes of official oppression and impersonating a public official. Further, the trial court

properly charged the jury on mere encounters and investigative detentions. Trial counsel did submit proposed jury instructions that included a section titled "Law Enforcement Authority of Constables," and apparently, the court did not accept counsel's proposed instructions. However, the court did instruct the jury on the lawful authority of constables to encounter citizens and to make warrantless arrests for breaches of the peace. N. T. Trial, 252-60. Thus, although Appellant did not receive the exact instructions he wished to receive, he could not have been prejudiced by the instructions read to the jury. Counsel cannot be ineffective for failure to litigate a meritless claim. **See Fears**, 86 A.3d at 804.

In his third issue, Appellant contends that trial counsel failed to advise Appellant that, if he called a character witness, the Commonwealth would be permitted to call rebuttal witnesses to testify to his bad reputation. Appellant's Brief at 4.

When deciding whether to call a character witness, counsel should inform a defendant of the right to present character witnesses and should discuss with the client whether such witnesses would be advisable under the circumstances of the evidence and defenses available. **See Commonwealth v. Carter**, 597 A.2d 1156, 1162 (Pa. Super. 1991). Here, counsel testified he discussed the ramifications of calling character witnesses with Appellant. N. T., 4/1/15, at 52. The PCRA court found this testimony

credible. We defer to this finding. **See Brown**, 48 A.3d at 1277. Consequently, Appellant's claim is without merit.

In his final issue, Appellant contends that trial counsel was ineffective for failing to object to the "prejudicial mannerisms" of the trial court, which "tended to belittle Appellant and his defense to the charges." At the evidentiary hearing, trial counsel testified extensively to his familiarity with the trial court's courtroom demeanor and that he felt it best to pick his battles so as to avoid harming his client's case. Counsel's actions had a reasonable basis, and thus, he was not ineffective. **See Johnson**, 966 A.2d at 533.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/11/2017